FLINTOFF v. MUSKEGON TRACTION & LIGHTING CO.

1. DEATH—DEATH ACT—INFANTS — CONTRIBUTORY NEGLIGENCE OF PARENTS.

In an action by a parent, as administrator, brought under the "death act," the contributory negligence of the parents would operate to defeat the action, based upon ordinary negligence.

2. STREET RAILWAYS — DEATH — INFANTS — CONTRIBUTORY NEGLIGENCE.

A bright, intelligent boy, of the age of 7 years and 5 months, who slid down a steep hill onto a street car track, knowing that cars were running thereon at frequent intervals, riding feet foremost and lying upon his stomach upon a sled, who was run over by a car and instantly killed, held, guilty of contributory negligence, as a matter of law.

3. SAME—TEST.

Age is not the true test as to whether a child is guilty of contributory negligence; it is the intelligence, and not the age, that must control.[1]

4. EVIDENCE—ORIGINAL RECORD CONTROLLING.

Where plaintiff offered in evidence the original record of a resolution of the common council, he could not later contradict it by offering a corrected published copy, since the original record must control.

5. APPEAL AND ERROR—HARMLESS ERROR.

Where deceased was guilty of contributory negligence, which would bar recovery unless defendant was guilty of gross negligence, the trial court was not in error in excluding evidence of ordinary negligence.

6. STREET RAILWAYS — GROSS NEGLIGENCE — EVIDENCE — QUESTION FOR JURY.

Where the evidence as to the manner in which the injury occurred was in conflict, the trial court very properly submitted the questions of gross negligence, and of discovered negligence to the jury.

Error to Muskegon; Sullivan (James E.), J.   Sub-

[1] Authorities passing upon the question of age at which doctrine of contributory negligence may be applied to child, are collated in a note in L. R. A. 1917F, at page 42.

mitted October 17, 1919.    (Docket No. 71.)    Decided
December 23, 1919.

Case by George A. Flintoff, administrator of the
estate of George N. Flintoff, deceased, against the
Muskegon Traction & Lighting Company for the al-
leged negligent killing of plaintiff's decedent.  Judg-
ment for defendant.  Plaintiff brings error.  Affirmed.

*Alex. Sutherland,* for appellant.

*Charles B. Cross* and *Wallace Foote,* for appellee.

STONE, J.  This action was brought under the "death
act," so-called, to recover damages from the defendant
for causing the instant death of George N. Flintoff,
the son of the plaintiff, a boy 7 years and 5 months
old, at about noon on December 31, 1916, at the city
of Muskegon.  The first count of the declaration al-
leged the negligence of the defendant to consist of
failure to ring a bell or sound a gong, to warn, when
approaching the plaintiff's decedent where he was on
the track; that defendant was guilty of gross negli-
gence in not stopping the car to avoid the accident;
and that defendant was negligent because it did not
equip its car with proper fenders.  The second count
charged defendant with negligence in not complying
with an ordinance of the city of Muskegon requiring
it to equip its double-truck cars with air brakes and
fenders.  The plea was the general issue.

The place where the accident occurred was at the
intersection of Cherry street with Wilcox street, upon
the latter of which was defendant's track, and the car
was going from Muskegon lake to Lake Michigan park.
The streets cross each other at right angles.  The
deceased was coasting, or sliding down the hill on
Cherry street at the intersection aforesaid.  The hill
was steep and somewhat obscured from the view of

the motorman by two houses located near the intersection, on the side where the hill was located. The Flintoff family home was located on Wilcox street about one block away from the scene of the accident. There was a curve in defendant's track as it came onto Wilcox street going towards the park, about 150 feet, or half a block, from the place of the accident at said intersection.

There was some conflict in the evidence as to just how the accident occurred. On the part of the plaintiff the evidence tended to show that the deceased had been given a hand sled by his parents, as a Christmas present, the week before; that for some time previous to December 31 a number of children in the vicinity, including the deceased, had been accustomed to sliding down this hill; that on this occasion the deceased was lying on his stomach on his sled with his feet at the front of the sled, and in this condition he slid down the hill and onto the track of the defendant in Wilcox street, and was run over and instantly killed by the approaching car. The evidence was undisputed that the children knew that cars were running on Wilcox street. The plaintiff's principal witness, as to the accident, testified as follows: "We boys knew that the car was running there that day." The father of deceased, and plaintiff here, testified that he knew the boys were using their sleds on the street.

"*Q.* Had you known of his sliding down this particular hill?

"*A.* No, sir, he was forbid to slide on the hills,"— not stating who had forbidden him.

The mother of deceased testified that she instructed him that he should not slide on Pigeon hill—claimed by the plaintiff to be the hill in question; and she further testified that she had watched him as carefully as she could, but she knew that he was with his

sled, out on the street; that he had been allowed to go with his sled on the street at other times, but that she did not know anything about children sliding down this hill.

The motorman of the defendant in charge of the car, which was a double-truck car, was the only adult witness to the accident. He testified that after 11 o'clock a. m. at that time of the year cars went to Lake Michigan park every 15 minutes; that he had run this car for three months before the accident, passing this place about once every hour. He testified that he had not seen children there before; that he did not know that children were using that hill for the purpose of sliding on it, and that his attention had never been called to it by any person; that this car was due at Lake Michigan park at 12 o'clock, and that the accident happened at 11:47 o'clock a. m., and that the car was on time when it reached Wilcox street. He testified as to the curve on the street car track just as you enter Wilcox street; that as he came around this curve he was running from 7 to 10 miles an hour, with no power on while going around the curve. As the car straightened up on Wilcox street he gradually applied the current, and at the time of the accident the car was running about 10 miles an hour. He testified that he did not see the child until it was about 8 feet from the car, and that it came darting down the hill and ran right under the front step of his car. He testified the first he saw, "some of the children hollered, and I seen the little fellow coming down the hill, he was coming rapidly, and as he was coming he went right under the front step of my car." He testified that, instantly, when he saw the child, he reversed the power, and the reason why he operated in that way was because he could stop the car quicker by reversing the power, and that he applied the reverse just as quickly as he saw the child;

that he could, and did, stop the car within 20 feet.
The manner in which the accident occurred is given
by the witness in great detail.

In the cross-examination of the motorman the fol-
lowing question was asked:

"Mr. Waltz, if your car had a fender on, something
like that, do you think the boy would have gone under
the car?"

This question was objected to and the objection sus-
tained by the trial court.

Upon the trial of the case the plaintiff sought to
show by the records a resolution of the council of the
city of Muskegon requiring the defendant to place air
brakes and fenders on all its double-truck cars within
60 days after the service of the notice. The resolution,
as recorded in the journal of the council proceedings,
provided that the city recorder be instructed to place
air brakes and fenders on all of its cars. Objection
was made to the record of the resolution, for the rea-
son that it was meaningless and imposed no duty upon
the defendant. The court excluded the record of the
resolution for that reason. Plaintiff's counsel then
sought to introduce in evidence a copy of the published
resolution, which stated the duty of the defendant to
place air brakes and fenders on its double-truck cars.
The court refused to receive in evidence this copy of
the resolution for the reason that the original resolu-
tion, as it appeared in the record, was a meaningless
thing, and, having been introduced by the plaintiff,
he could not contradict it by the published copy of the
resolution. The manner in which this difference oc-
curred appeared in the testimony of the city recorder,
in which he said:

"I corrected the one sent to the printer and told the
stenographer to correct the other, and she evidently
forgot it."

The court held that the record itself must govern, and that the plaintiff himself having discredited the original resolution, the copy should not be received in evidence.

The trial court, at the close of the evidence, held that the parents of the deceased were guilty of contributory negligence in permitting the deceased to go upon the streets with his sled in the company of other children; and that, therefore, there could be no recovery on the ground of ordinary negligence of the defendant; but it was ruled that the case should be submitted to the jury upon the claim made by the plaintiff, that the defendant's motorman was guilty of gross negligence. The case was so submitted under a lengthy charge, which fully stated the rule as to gross negligence, and as to discovered negligence. The court added the request of plaintiff's counsel, based upon *Fike* v. *Railroad Co.*, 174 Mich. 167, as follows, at the close of the charge:

" 'If you find that the motorman could have seen the boy on the track by the exercise of ordinary care, for a time long enough to have stopped the car and avoided the accident, and that he did not do so, that would be gross negligence and the defendant would be liable.' I thought I told you that. I tried to tell it to you before, but I give it to you that way. That is the law, gentlemen."

The jury found in favor of the defendant of no cause of action, and the judgment was entered accordingly.

The plaintiff has brought the case here upon writ of error, and in his brief counsel for plaintiff discusses the questions raised by the assignments of error as follows:

(1) Were the parents guilty of contributory negligence?
(2) Was the defendant guilty of negligence in not equipping its cars with fenders?

(3) Did the court err in refusing to receive the testimony offered by the plaintiff in relation to the resolution of the council of the city of Muskegon, ordering defendant to equip its cars with fenders and its double-truck cars with air brakes?

1. As has been noted, this action was brought under the "death act," as distinguished from the "survival act." Under the authority of *Feldman* v. *Railway*, 162 Mich. 486, which was an action by a parent, as administrator, brought under the death act, the contributory negligence of the parents would operate to defeat the action, based upon ordinary negligence. In *Love* v. *Railroad Co.*, 170 Mich. 1, the distinction is pointed out between actions under the death act and those brought under the survival act. Without deciding whether the court erred in holding that the parents, as matter of law, were guilty of contributory negligence, we are satisfied that it should be held, under our authorities, that the deceased was, himself, guilty of contributory negligence. Here was a bright, intelligent boy, as testified to by his parents, of the age of 7 years and 5 months, who slid down this steep hill onto this car track, riding feet foremost and lying upon his stomach upon the sled, knowing that the cars were running upon that track at frequent intervals. If this did not constitute, under our authorities, contributory negligence it would be difficult to state a case involving that doctrine. The authorities upon this subject are thoroughly discussed in *Mollica* v. *Railroad Co.*, 170 Mich. 96. In that case, at page 101, Justice STEERE, speaking for this court, said:

"Where the plaintiff is an infant of such tender years as to be without discretion, contributory negligence cannot be imputed to him; and such is the general presumption where the child is under the age of 7 years. It is also held by some authorities that such presumption obtains, *prima facie*, until the age of 14 years is reached; but, where capacity is shown, the

general rule of contributory negligence will apply. While in the case of a child between the ages of 7 and 14 years the allegation of age might raise some presumption which tends to remove the imputation of neglect, it is mainly a matter of pleading; and the fact, when proven on the trial, does not establish that freedom from negligence essential to recovery."

Attention is called to the numerous Michigan cases there discussed, including the case of *Trudell* v. *Railway Co.*, 126 Mich. 73 (53 L. R. A. 271). There it was held that a child 7 years and 4 months old was guilty of contributory negligence. In the course of an unanimous opinion in that case, Justice LONG used the following language:

"Age is not the true test in such cases. It is the intelligence of the boy, not his age, that must control." Citing cases.

Attention is also called to the recent case of *White* v. *Cowing*, 205 Mich. 318, where some of our cases are cited. Had the trial court found, as we do, that the deceased himself was guilty of contributory negligence, the result would have been the same, to wit: that there could be no recovery unless the defendant was found guilty of gross negligence.

2. The second and third grounds may be discussed together. We do not think the court erred in excluding the record of the resolution of the common council and the purported printed copy thereof. Had the plaintiff rested content with the introduction of the published copy of the resolution, and had he not first discredited that, by the introduction of the original record, another question would be presented. We think the conclusion reached by the court upon this branch of the case was the proper one—that the original record, when offered by the plaintiff, must control. That record stood in its original form at the time it was offered in evidence.

Neither do we think the court erred in its ruling as to the question asked of the motorman upon the subject of fenders. If we are correct in holding, as we do, that this child was guilty of contributory negligence that would bar a recovery, except upon the theory that defendant was guilty of gross negligence, then the two subjects of the resolution and of the fenders was unimportant because they have to do with the question of ordinary negligence.

It is also urged by counsel for the appellee that the conduct of the defendant was not the proximate cause of the injury, but that the proximate cause was the darting down upon this track by the deceased, riding feet foremost upon his uncontrolled sled; and the following cases are cited upon that subject: *Lambeck* v. *Railroad Co.*, 106 Mich. 512; *Murphy* v. *Railway Co.*, 107 Mich. 627; *Cavanaugh* v. *Railway Co.*, 175 Mich. 161.

In the case last cited plaintiff was injured because his horse stopped on the track and refused to proceed, and it was held that the act of the horse caused the injury; and it is urged in the present case that the deceased was in a place of danger because he was unable to stop his sled in the manner in which he was riding, and in darting in front of the car. To the above cases may be added the cases of *Stoll* v. *Laubengayer*, 174 Mich. 701, and *Illinois Cent. R. Co.* v. *Dupree*, 34 L. R. A. (N. S.) 645 (138 Ky. 459, 128 S. W. 334). It is not necessary for us to pass upon this question, as the case is disposed of on other grounds.

Owing to the conflict in the evidence as to the manner in which the injury occurred, we think the trial court very properly submitted the questions of gross negligence, and of discovered negligence, to the jury. As we have shown, plaintiff presented a request upon that subject, and he went before the jury upon that

question.   The jury found a verdict upon the merits of that question in favor of the defendant.   We have examined the charge with great care, and if it is to be criticized at all it is because of its great length and the numerous reiterations of the correct rule.   There can be no question as to the law of the case as presented by the trial court.

We find no reversible error in the record, and the judgment below is affirmed.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.