[No. 13528.  Department One.  February 10, 1917.]

# W. L. SWAIN et al., Appellants, v. THE CITY OF SPOKANE, Respondent.[1]

MUNICIPAL CORPORATIONS—STREETS—DEFECTS — BRIDGE RAILING— NEGLIGENCE — PROXIMATE CAUSE.  A municipal corporation is not liable for injuries sustained when the steering gear of plaintiff's automobile refused to work, and the car, driven at slow speed, crossed the curb and sidewalk and went through the low wooden railing of a bridge at the side of the street; since the street was reasonably safe for ordinary travel, and there is no absolute duty to maintain railings in the absence of obvious danger, and the proximate cause of the accident was the defect in the automobile.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 5, 1916, upon sustaining a demurrer to the complaint, dismissing an action for personal injuries sustained by the driver of an automobile. Affirmed.

*Roche & Onstine,* for appellants.

*H. M. Stephens, Ernest E. Sargeant,* and *Dale D. Drain,* for respondent.

ELLIS, C. J.—Action for personal injuries.  The trial court sustained a general demurrer to the complaint.  Plaintiffs filed an amended complaint in substance the same as the original.  On motion of defendant it was stricken, and an order of dismissal was entered.  Plaintiffs appeal.

The material facts alleged were as follows:

"That on or about 2:30 p. m. on the twelfth day of October, 1915, Charlotte B. Swain was riding in an Overland automobile, going east along the south side of East Sprague avenue and that said automobile passed over the west bridge and about two-thirds along the east bridge at the location known as Sprague avenue fill, between Arthur & Ivory streets on said East Sprague avenue, and about 65 feet from said Ivory street, said car was then and there being operated and driven at the rate of about seven to ten miles per hour, when

[1]Reported in 162 Pac. 991.

the steering gear of the said car suddenly failed to work and the car became beyond control and suddenly turned to the right and went over the curb-stone and across the sidewalk and struck against a temporary board fence which was built and maintained by the city on the high stone wall which constitutes the south side of the said bridge and roadway. Said car at the time it struck said fence was going at the rate of about two miles per hour [in amended complaint alleged about one mile per hour], but pushed through and over said fence and said car went over the edge of said bridge and stone wall and with said plaintiff fell about thirty-five feet to the ground, greatly and permanently injuring her and smashing and destroying said car."

This was followed by allegations of carelessness and negligence and want of ordinary care and caution on defendant's part in maintaining a five-inch instead of a nine or ten inch curbstone and in maintaining a board fence on the south side of the bridge or fill instead of a stone, cement or iron wall or railing. Damages were demanded for personal injuries to Charlotte B. Swain in the sum of $14,000, and for injuries to the automobile in the sum of $1,000.

Respondent moves that the appeal be dismissed for insufficiency of the notice, but since the judgment must be affirmed in any event, we pass at once to a consideration of the case on its merits.

Did the complaint show a violation of duty on the city's part? Appellants assert the affirmative, citing in its support four decisions of this court which we shall briefly consider.

In *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, the plaintiff was injured by falling into an excavation extending into the street. The excavation was left unguarded and without danger signal or light. The accident occurred about seven o'clock in the evening in the month of December. The city was held liable, but in the course of its opinion, this court marks the limit of the city's duty in the premises as follows:

"A duty (when not expressly imposed by charter) arises to the public from the character of the powers granted to

keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and it is liable to respond in damages to those injured by a neglect to perform such duty."

In *Kirtley v. Spokane County*, 20 Wash. 111, 54 Pac. 936, the question involved was whether the county was liable for injuries sustained by reason of a defective county bridge which fell while plaintiff, with his wagon and team, was crossing it. The court held the county liable, in that it had neglected the positive duty to keep the bridge in repair adequate to ordinary use.

In *Einseidler v. Whitman County*, 22 Wash. 388, 60 Pac. 1122, the county was building a new bridge a short distance from an old one which was still in use. In using iron from the old bridge, the county removed the guard rails from it. There had been a hole in the old bridge for some time and, on the day of the accident, it was filled with blocks and rubbish from the new one. The plaintiff was driving over the old bridge, when her team, taking fright at this pile of rubbish, backed off the approach and injured her. The court sustained a verdict for plaintiff, holding that it was for the jury to say whether or not the absence of rails or barriers was a contributing cause with the hole filled with rubbish combining to furnish the proximate cause of the injury.

In *Zolawenski v. Aberdeen*, 72 Wash. 95, 129 Pac. 1090, the plaintiff was injured by stepping through a hole in a bridge, which defect had existed for five or six months prior to the accident. Obviously there was a violation of the duty to keep the street reasonably safe for ordinary travel.

In each of these cases it will be noted that the use to which the bridge or street was being put by the person injured was the ordinary, reasonable use for which it was intended, and that the negligence causing the injury, and to which alone the injury was traceable, was failure to keep the street or bridge reasonably safe for such use. In the case before us, it is clear that, for all ordinary uses of the street reasonably to be anticipated, it was kept in a safe condition, and that, if

appellants' car had been equally fit for its intended purpose, the accident would not have happened. The defect in the car itself was plainly the proximate cause of the injury. The breaking of the railing was a mere condition. It could not reasonably be anticipated that a car, by reason of its own defects, would be driven over the curb, across the walk for pedestrians, and through the wooden railing at the side of the street. To hold the municipality liable in such a case would be to make it an insurer against every accident on its streets—in effect, an insurer of the tractability of every team and automobile driven on its streets. This exceeds the duty imposed upon a municipal corporation in relation to the care of its streets. The facts make a plain distinction between the cases above noticed and the one before us.

This case falls distinctly within the rule announced in *Leber v. King County*, 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267. The accident there involved happened on a county highway by reason of a horse, driven by the plaintiff, shying, losing his footing and falling down a bank at the roadside. Plaintiff charged the county with negligence in its failure to maintain a railing or barrier at the side of the road. We said:

"The duty to put barriers upon a highway, although travel thereon be in a degree dangerous, is not absolute. The law does not require it unless the danger complained of is unusual. . . . The unusual danger noticed by the books is a danger in the highway itself. . . . We take it, then, that the rule contended for applies only where a traveler exercising ordinary care would not expect to find danger, or where the natural or surrounding conditions would suggest protection; . . . The duty of the county is discharged if it maintains its highways reasonably safe for ordinary travel."

This measure of duty is in consonance with the better reasoned authorities generally.

In *Herr v. Lebanon*, 149 Pa. 222, 24 Atl. 207, 34 Am. St. 603, 16 L. R. A. 106, the plaintiff was a passenger in an omnibus drawn by one horse. The street passed along the side

of a hill. On the lower side there was a steep descent of several feet. There was no guard rail along the declivity. While ascending the hill in the middle of the roadway, the horse suddenly fell. In struggling to regain its feet, it rolled down the declivity, drawing the omnibus after it. Plaintiff was injured. In reversing a judgment for plaintiff against the municipality, the supreme court of Pennsylvania said:

"A road that is in suitable condition for ordinary travel, conducted in the ordinary manner, does not become defective because some extraordinary condition, not foreseen, arises, in consequence of which it is, for the moment, too rough or too narrow to meet all the exigencies of the situation. Whatever is so much out of the ordinary course as not to be naturally foreseen, as a probable result of the condition of the highway, the road authorities are not bound to provide against; and their neglect to make such provision can be neither a proximate nor a concurring cause of the injury received in consequence of such extraordinary happening."

In *Nichols v. Pittsfield*, 209 Pa. 240, 58 Atl. 283, a horse becoming frightened ran into a ditch at the side of the highway, causing the accident. The court said:

"To impute a failure of duty on the part of a township, where it has provided a public road suitable for the ordinary use of the same, because it failed to provide for a possible contingency that might arise from the fright of a horse not connected in any manner with any defect in the roadway, would be to impose a duty far beyond any reasonable requirements and without substantial reason therefor."

In *Kingsley v. Bloomingdale*, 109 Mich. 340, 67 N. W. 333, it appeared that the plaintiff had safely crossed a township bridge so that the rear wheels of his carriage were eight feet or more from the bridge, where he stopped to talk with a neighbor. The horse got the checkrein over the thill and backed onto the bridge and off at its side. The court said:

"We have held, in some cases, that circumstances might require railings, but in no case have we gone so far as to hold that a highway or bridge required fencing, except in cases of obvious danger."

In *McClain v. Garden Grove*, 83 Iowa 235, 48 N. W. 1031, 12 L. R. A. 482, plaintiff was traversing a bridge in a cutter drawn by one horse. The bridge was twelve feet wide and was provided with railings. About midway of the bridge, the horse suddenly fell against the railing, broke it down, and dropped off, drawing with him the cutter and its occupants. Plaintiff was injured. In affirming a directed verdict in favor of the defendant, the court noted that the railing of the bridge was about two and one-half feet high, and that it might be true that, had it been of sufficient height and strength to bear the weight of the horse, the accident would have been avoided, but held that defendant was not an insurer against accidents, further saying:

"It was its duty to provide for the use of the bridge in the usual manner, and to guard against ordinary contingencies, or those which might be reasonably apprehended."

In *Hubbell v. Yonkers*, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522, it appeared that, on each side of the roadbed thirty feet wide, there were sidewalks ten feet wide and separated from the roadway by a curbstone eight inches high. On one side of the street was an unguarded declivity of about twelve feet. A horse drawing a wagon suddenly took fright, dashed across the sidewalk and down the embankment, overturning the wagon and injuring the plaintiff. The New York court of appeals exonerated the city, saying:

"The city is not an insurer of the safety of persons traveling its streets, nor is it bound to furnish an absolutely safe and perfect highway under all circumstances."

The decisions of this court in *Teater v. Seattle*, 10 Wash. 327, 38 Pac. 1006, and *Dignan v. Spokane County*, 43 Wash. 419, 86 Pac. 649, are in harmony with the decisions above discussed. Each of those cases, it is true, involved the excessive force of a runaway team. Such a contingency, however, is no more extraordinary nor less to be anticipated than the eccentricities of an unmanageable automobile.

We conclude that the appellants failed to state a cause of action. The judgment is affirmed.

MORRIS, MAIN, CHADWICK, and FULLERTON, JJ., concur.